Richmond, P. J.
Appellee herein brought this action to recover for injuries received from being bitten and otherwise *23 injured by a dog kept by tbe appellant, and which, it is alleged, appellant knew was accustomed to attack and bite mankind.
Appellant answered, specifically denying the allegations in the complaint, and as an additional defense claimed that the injury received was the result of appellee’s negligence. The record discloses the fact to be that appellant is the owner of a brewery, and in the alley adjoining the brewery, part of the premises belonging to him, he kept a dog chained in a kennel near the entrance to the cellar where he had stored his malt; that the length of the chain was between five and eight feet; that appellee, a policeman, was in pursuit of a suspicious character, and, believing that he had entered this alley, went into it hunting for the person, and that while so engaged he, without seeing the dog or the kennel, or having any knowledge of the fact that the dog was there, advanced near enough to the kennel to be bitten by the dog; that the alley, though private, was easy of access at one end, and frequented by employees of appellant and others.
The ownership of the dog and his ferocity were confessed at the trial, and are admitted in the argument here. It is also shown that appellee received considerable medical attention for a period of 9 days, and that he was unable to do any work of any consequence for a period of 16 days. The disposition of the dog to bite maukind was not only established by the admissions of the appellant, but also by evidence of other witnesses, and especially by his former master. The appellant testified that he kept the dog chained in the same place at all times, never suffered him to go at large, and kept him for the purpose of protecting his premises from strangers and tramps ; that if a stranger should approach the kennel the dog would certainly bite him.
Trial by jury. Verdict for plaintiff in the sum of #800. On motion for a new trial, the court requested plaintiff to remit #300, which was done, and judgment on the verdict for #500 was entered. To reverse this judgment this appeal is prosecuted.
*24 In the argument of the case appellant says that the true question involved is, “ May the owner of property keep on his own premises a vicious dog, when constantly confined on the premises, and kept from running at large, for the protection of his property?” He answers this in the affirmative, and displays much faeetiousness, ability, and ingenuity in presenting his side of the proposition.
We will accept the foregoing proposition in the following language: That one is not liable for the damages caused by his dog, though he knows he has vicious propensities, if he exercises proper care and diligence to secure him so that he will not injure any one who does not unlawfully provoke or intermeddle with him. But this principle is not applicable to the circumstances in this particular case. The appellee assumed that, in the pursuit of his duty, he had a right to enter this alley in search of the person whom he was seeking. True it is that he was there voluntarily, but he was there ■innocently; and, being there under those circumstances and receiving the injury which he did, we feel no hesitancy in saying that he was entitled to recover.
This question has received the attention of some of the ablest judges in this country and in England, and a careful review of the cases leads us to the conclusion that the gist Iof the action is in the keeping of the animal after knowledge of its mischievous disposition. In Marble v. Ross, 124 Mass. 44, Mokton, J., lays down this rule: “ The law imposes a 'stringent responsibility upon a man who knowingly keeps a vicious and dangerous animal. He is liable to any person who, without contributory negligence on his part, is injured by such animal, and he cannot exonerate himself by showing that he used care in keeping and restraining the animal. He takes the risk of being able to keep him safely so that he shall not injure others. The owner’s negligence is in keeping the 'animal knowing that it is .dangerous.” In Muller v. McKesson, 73 N. Y. 196, the rule is announced that, “ in an action ■against the owner of a ferocious dog or other animal, for injuries inflicted by it, the gravemen of the action is the keep *25 ing of the animal with knowledge of its propensities; and, as to the latter, proof that the animal is of a savage and ferocious nature is equivalent to express notice.” “The owner is bound to keep the animal secure at his peril, and, if it does mischief, negligence is presumed. This presumption cannot be rebutted by proof of care on the part of the owner- in keeping or restraining it, and he is absolutely liable, unless relieved by proof of some act or omission on the part of the person injured.” In Partlow v. Haggarty, 85 Ind. 178, it was held that “ whoever keeps an animal accustomed to attack or bite mankind, with knowledge of its dangerous propensities, is prima faoie liable to an action for damages at the suit of any person attacked or injured by the animal, without proof of any negligence or fault in the securing or taking care of it. The gist of the action is the •keeping of the animal after knowledge of its mischievous disposition.”
In Sherfey v. Bartley, 4 Sneed. 58, it is said: “ The defendant knew his dog was vicious, and disposed to attack and bite persons, and was bound to have so confined him as 'to prevent him from doing mischief.”
Brooks v. Taylor, 65 Mich. 208, was an action for injuries inflicted by a bull, and it was held that “ the negligence in such a case consists in keeping such an animal after notice of its dangerous habits : and whoever keeps an animal accustomed to attack and injure mankind is prima facie liable in an action on the case at the suit of any person injured, without any averment of negligence or default in securing and taking care of the animal. If in such a case it is shown,
• as a matter of defense, that the plaintiff wilfully- provoked the animal, or was grossly negligent in going near it, with knowledge of its vicious habits, he cannot recover.”
In Bari v. Van Alstine, 8 Barb. 630, after reviewing the various authorities, Selden, J., says : “ The authorities seem to point to the following conclusions: First, one who owns or keeps an animal of any kind becomes liable for any injury the animal may do, only on the ground of some actual or *26 presumed negligence on his part; second, it is essential to the proof of negligence, and sufficient evidence thereof, that the owner be shown to have had notice of the propensity of an animal to do mischief; third, proof that the animal is of a savage and ferocious nature is equivalent to proof of express notice.” Pickering v. Orange, 1 Scam. 492; Brice v. Bauer, 108 N. Y. 428.
The principle here contended for by appellant is most thoroughly covered in Laverone v. Mangianti, 41 Cal. 138. In that case Rhodes, C. J., delivering the opinion of the court, said: “ It is insisted, on behalf of the defendants, that a person may lawfully keep a ferocious dog,—one that is accustomed to bite mankind. That position may be conceded, and it may also be conceded that he has the same right to keep a tiger. The danger to mankind and the injury, if any is suffered, comes from the same source,—the ferocity of the animal. In determining the responsibility of the keeper for an injury inflicted by either animal, the only di fference I can see between the two cases is that, in the case of an injury caused by a dog, the knowledge of the keeper that the dog was ferocious must be alleged and proven, for all dogs are not ferocious, while, in the case of a tiger, such knowledge will be presumed from the nature of the animal.” The circumstances in that case were that “ the dog was chained under the steps leading to the defendant’s house in such a manner that he could not reach any one ascending the steps; that the plaintiff, in entering the house upon lawful business, was ascending the steps, when one of the steps, which was loose, slipped from its position, and the plaintiff’s leg went through the opening, when it was seized and bitten by the dog under the steps.”
This is a much stronger case for the defendant than the case at bar, for here, in an alley frequented by the employees of the defendant and by other persons, as testified to by Downing,—an alley easy of access at one end,—this dog was kept chained, but so chained that it was capable of inflicting *27 an injury, and did inflict an injury, and its disposition to inflict such injury was well known to the defendant.
One of the best-considered cases is the case of Johnson v. Patterson, 14 Conn. 1, wherein this language is used: “A man may not, in this country, use dangerous or unnecessary instruments for the protection of his property against trespassers. Such instruments may be used in England, but the principles on which their decisions purport to rest are not sustainable or applicable here. The true principles of the common law are recognized here, and a man may use that force which is necessary to protect his property, and no more; and he may keep and use such instruments and no other, as the same necessary degree of force will justify. A dog is an instrument for protection. A ferocious one is a dangerous instrument, and the keeping of him on the premises to protect them against trespassers is unlawful, upon the same principle that setting spring guns or concealed spears or placing poisonous food is unlawful.” This case is followed and approved by the supreme court of Connecticut in Woolf v. Qhallcer, 81 Conn. 121.
In the particular case at bar it is admitted that the dog was vicious,—accustomed to bite. We must, to use the language of the court in Woolf v. Chalker, supra, say that “the defendant had no right to keep such a dog for any purpose, unless in an inclosure or building in the night season, and cautiously, as a protection against criminal wrong-doers. Certainly he could not keep him on his premises in the day-time in such manner that a person, by accident, mistake or a voluntary or involuntary trespass, might be exposed to his fury and be injured. In this ease, if the plaintiff was a trespasser at all, he was so unintentionally, involuntarily, and by mistake.” This, it occurs to us, is quite sufficient to settle the liability of the defendant to the plaintiff or appellee for the injuries sustained.
It is assigned for error that the court erred in its instructions to the jury. Without giving in detail the instructions, we think it is sufficient to say that we do not concur with *28 appellant’s counsel in this view. We see nothing in the instructions not sustained by the authorities cited, and, for the same reason, the court was warranted in refusing the instructions asked by defendant.
The last and only error to which our attention is called is that the damages are excessive. In view of the fact that the jury found a verdict for $800, and that the trial court, which heard all the testimony, determined that it should sustain a verdict for $500, we do not feel at liberty to disturb the judgment. Our conclusion is that the three allegations necessary to be made and proved in a case of this character—-first, that the dog was vicious and in the habit of biting mankind; second, that the defendant knew it; third, that he bit and injured the plaintiff without any neglect or fault on his part—• were fully and satisfactorily established. We think the verdict ought not to be disturbed.
The judgment will be affirmed.

Affirmed.