KEENAN v. LEGARDEUR, Appellant

(October 18, 1926. Opinion and Decree.)
(November 2, 1926. Rehearing Refused and Decree Amended.)

(*Syllabus by the Court.*)

1. **Louisiana Digest—Landlord and Tenant—Par. 52, 54.**

Under Art. 2692 R. C. C. the lessor is obliged to maintain the lessee in the peaceful possession of the leased premises, by which is meant moral as well as physical peace.

2. **Louisiana Digest—Landlord and Tenant—Par. 52, 54, 55, 70.**

A disturbance of moral conditions, affecting the peaceful enjoyment of leased premises, must be serious and continuous, so as to render the premises uninhabitable, and amount to a moral eviction.

Appeal from the First City Court, Section "A", Hon. William Alexander Bahns, Judge.

Action by Walter Cook Keenan against Rene J. Legardeur, Jr.

The was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

Leslie Beard, of New Orleans, attorney for plaintiff, appellant.

Rene A. Viosca, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. This is a suit by a landlord against his tenant for the sum of $340.00 claimed as rent.

The tenant admits the execution of a lease for the premises, for which rent is claimed, and, that rent notes aggregating the sum demanded, signed by him, are unpaid in the hands of plaintiff. His defense is based upon Art. 2692 R. C. C. to the effect that the lessor is bound to "maintain the thing in a condition such as to serve for the use for which it is hired and to cause the lessee to be in peaceable possession of the thing during the continuance of the lease".

Defendant avers that he leased lower floor of a two-story or duplex dwelling for a period of nineteen months beginning March 1, 1924. That "beginning with the first night and continuing almost uninterruptedly until May 25, 1925, when defendant moved from the premises", the tenant of the upper apartment, who also rented from plaintiff, his family and friends "conducted such a noisy and disorderly house" that defendant and his family in the lower apartment were unable to sleep; that the tenant in the upper apartment "continually used loud and obscene language and parties of drunken merrymakers made such a disturbance, that the lower apartment was practically untenantable and uninhabitable".

Our attention is directed to Keenan vs. Flanigan, 8578 Orl. App., where we held, with the subsequent approval of the Supreme Court, 157 La. 750, 103 South. 30, that:

"The obligation of the lessor as imposed by Art. 2692 R. C. C. to 'maintain the thing in a condition such as to serve for the use for which it is hired' and 'to cause the lessee to be in peaceable possession of the thing during the continuance of the lease' refers to moral as well as physical condition and to moral as well as physical peace.

"The word 'premises' as used in Art. 2703 R. C. C. which declares that 'the les-

sor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises' includes the lower as well as the upper floor of a dwelling house, consequently the lessor is not released from responsibility for disturbances created by occupants of a lower floor of a two-story dwelling affecting his tenants the occupants of the upper floor."

The principle announced in the cited case, though novel at the time, is now the settled jurisprudence and, further reflection convinces us of its soundness and manifest equity. But it is not every disturbance of moral conditions that justifies a tenant in refusing to pay his rent. The disturbance must be of an extraordinary character and continuous, at least intermittent.

In the Flanigan case (supra) we said "A disturbance of moral conditions affecting the peaceful character of a home to an extent that it becomes uninhabitable, amounts to a moral eviction of the tenant which in our view justifies him. in a refusal to pay the rent".

The evidence before us does not sustain the averments of the answer, and, we are unable to conclude that the vexation of defendant, by plaintiff's tenant, was such as to come within the doctrine of the Flanigan case. It is true that defendant testifies to one incident of a most distressing character. On that occasion plaintiff's tenant, of the upper apartment, is said to have used language so vile that we marvel at its appearance in the record. But even if we accept defendant's testimony at face value without any qualification of interest, we have only one incident. We would not be understood as deprecat-

ing the effect which even one exhibition of coarse vulgarity might have upon persons of refinement, and we assume the defendant to be of that class, but "one swallow does not make a summer" and one such disturbance does not amount to a moral eviction.

On the other hand six or seven witnesses testified to the peaceful character of the upper tenant. One of these witnesses, Mr. C. H. Chalifour, who resides next door, testified that he saw nothing and heard nothing unusual on the part of the upper tenant though he lived within twenty-five feet of the apartment.

Defendant occupied his apartment with the same surroundings for a period of fifteen months or from March, 1924, to May, 1925, when he left and took up his residence at Long Beach where he had rented a place for the summer. His long residence, as tenant, under circumstances which, according to defendant's own statement, were no more peaceful than when he left the apartment, would indicate that conditions, whatever they might have been, were endurable. The evidence, at best, is conflicting, and uncertain, and to justify a tenant in moving out and refusing to pay his landlord on the ground that he had been disturbed in the peaceful enjoyment of the property, greater certainty is required. Such was the opinion of the trial court with the advantage of personal contact with the witnesses and we are unable to say that he was clearly in error.

The judgment appealed from is affirmed.

The judgment is amended by making the interest begin from June 30, 1925, and as thus amended the rehearing is refused.