AYRES, Judge.
Plaintiff filed this suit against the defendant for damages to his automobile in the *602 sum of $608.93, resulting from a collision with a mule owned by the defendant, who allegedly permitted the animal to roam at large, in violation of an ordinance of the Caddo Parish Police Jury.
Defendant denied any negligence on his part and especially that he had permitted any of his stock to roam at large, and alleged that the mule breaking out of the pasture was purely an accident. He further contended that plaintiff's son, the driver, was operating plaintiff’s automobile in a careless and reckless manner at an excessive rate of speed and out of proper control, and while he was under the influence of intoxicating liquor, and that, finally, the driver could have avoided striking the mule by turning his car to either the right or left, where there was ample space for him to do so.
Defendant further reconvened for the sum of $150, the alleged value of the mule killed in the accident.
After trial on the merits, judgment was rendered in the district court, rejecting plaintiff’s demands as well as rejecting defendant’s reconventional demand.
Plaintiff has appealed devolutively to this court and the defendant has answered the appeal, praying that the judgment be affirmed so far as rejecting plaintiff’s demands and be amended so as to award him judgment on his reconventional demand.
The facts of this case, as alleged and as shown on the trial of the case, are that N. C. Alfred, Jr., age twenty-four years, had borrowed his father’s Studebaker automobile for his own personal use for the night of July 25, 1953, and that, while returning home from Shreveport, traveling the Spring Ridge-Texas Line Road in Caddo Parish, Louisiana, at about 1:30 a. m., July 26, 1953, at a speed of fifty to fifty-five miles per hour, he ran into and killed on the highway a mule owned by the defendant. The driver testified that the mule came from his right-hand side and proceeded in front of him on the highway, a distance of fifty to sixty feet away, at which time he endeavored to apply his brakes but was so close onto the mule that he did not have time or opportunity to-get any pressure thereon and, as he stated,, he “laid over in the seat and hit him”, the-force of the car picking the mule up, throwing it over the car, evidently forward to-back, and carrying it approximately sixty-six feet. The car then turned to the right and proceeded altogether approximately one hundred fifty feet from the point of impact, where it came to a stop of itself,, the, driver being on the floor board. The measurements are established by stipulation of the measurements made by the-State trooper. The driver also admitted that during his errand of pleasure and until possibly as late as 10:30 p. m., he had consumed five bottles of beer. From the evidence of the State trooper and other witnesses, it is established that the highway at the scene of this collision was straight for some distance in both directions.
The evidence further establishes that defendant’s father, J: :H. Lee, owns the sixty-acre pasture across the road from defendant’s residence, and that the defendant had access to and use of this pasture for pasturing his livestock. This pasture had been in. use for as long, as twenty-six years. The pasture was enclosed by a barbed wire-fence of three and four strands on post oak posts spaced eight to ten feet apart, the top-strand by as much as five feet high, and the bottom strand approximately one foot above the ground. Entrance to this pasture was through a gate or gap, which was-closed by inserting the bottom of a post into a wire loop attached to the fence post and. another wire loop placed over this post.. Following the accident, it was discovered that this wire gate or gap had been torn, down. None of the animals had broken out before, and defendant had no notice or knowledge before the accident that this-mule was out of the enclosure, or that the-gate had been broken down. He did not permit his stock to roam at large.
Plaintiff's claim is based on the proposition that an ordinance of the Caddo-Parish Police Jury forbids the owner of livestock, such as a mule, to permit it to-roam at large.
*603 This case presents two issues to be determined. One of these regards the negligence of the defendant vel non in not having or maintaining a proper enclosure for his livestock, and the other as to whether or not plaintiff has sustained his burden of proof as to the proximate cause of the accident.
The liability of an owner of animals which caused damage to another is governed by LSA-C.C. art. 2321, which, in part, reads:
“The owner of an animal is answerable for the damage he has caused * * As was stated in Raziano v. T. J. James & Co., Inc., La.App., 57 So.2d 251, 254:
“It would, therefore, appear per se that Article 2321 would impose an absolute liability upon the owner of an animal, irrespective of the existence of any ordinance; however, that article has been interpreted as subject 'to the negligence or fault requirements of Articles 2315 and 2316 of the Civil Code. Tillman v. Cook, La.App.1941, 3 So.2d 230. This interpretation is enunciated in Tripani v. Meraux, 1936, 184 La. 66, 165 So. 453, 455, where in the opinion it is stated ‘although article 2321 of the Civil Code declares, un-qualifiedly, that the owner of an animal is answerable for the damage he has done, the interpretation which has been put upon this article, consistently, by this court, is that the owner of an animal is liable for damages done by the animal only in cases where the owner was guilty of some fault or negligence in his ownership dr possession of the animal.’ A fortiori, the burden of proof is on the owner to show that he was without the slightest fault and did all that was possible to prevent the injury. Bentz v. Page, 115 La. 560, 39 So. 599; Damonte v. Patton, 1907, 118 La. 530, 43 So. 153, 8 L.R.A., N.S., 209, 118 Am.St.Rep. 384, 10 Ann.Cas. 862; Boudreau v. Louviere, La.App.1938, 178 So. 173. However, the presumption of fault is a rebuttable one. Mercer v. Marston, 1923, 3 La.App. 97; Matthews v. Gremillion, La.App.1937, 174 So. 703.”
The district judge, who saw the witnesses and heard the testimony, reached the conclusion that the mule was upon the highway without any fault on the defendant’s part. While the record is void of any showing as to how the gate was 'broken down, the fact is that two strands of the wire were broken, although the posts were left standing. The fence and gate were of substantial material and substantially built. We are riot informed of any law or ordinance requiring any particular kind or character of fence or gate. That the fence and. gate enclosing the pasture served their purpose for many years, of preventing the animals enclosed therein from running at large, was fully established, without doubt, by the testimony of several witnesses who had had the opportunity to observe and who testified the defendant permitted none of his stock to roam at large. The defendant saw the gate almost daily and members of his family, as well as himself, made frequent use of this gate. Defendant could not foresee that the gate would be broken down and he could not be held liable for damages when he was not guilty of any negligence and was not able to foresee or prevent the accident caused by it. We find no 'manifest error in the judgment of the lower court in this respect.
The appellant cites the case of Raziano v. T. J. James & Co., Inc., supra, and Stinson v. Robinson, La.App., 68 So.2d 806, 808. The former case is distinguished from the case at bar in several particulars. For instance, the court found in that case that the fence, made of planks, was not a substantial fence; that it was constructed of “shoddy” material, characterized as “defective” or “inadequate” material. The mule therein involved was shown to possess pronounced propensities and characteristics of a spirited and skittish nature. Too, the defective corral was constructed adjacent to the Air Line Highway, where the likelihood of the mule getting out and roaming on a muchly traveled highway could not have been reasonably overlooked.
*604 In the Stinson-Robinson case, the court said:
“We believe that the facts in this case show that the defendant was rather lax in his efforts to keep his cattle enclosed in the pasture and that this amounted to negligence on his part * *
In this case, no laxity is shown on the part of the defendant. Our opinion is that the district court correctly found .that the mule upon the highway was without defendant’s fault or negligence.
Moreover, we are not impressed by the evidence that it has been sufficiently established, to that degree of legal certainty that the law requires, that the action of the mule was the proximate cause of the accident in that the mule ran into the road in front of the automobile at such a distance as afforded the driver insufficient time and opportunity of taking precautions for and preventing the collision. The driver is the only eye-witness who testified. His testimony is unsatisfactory in several particulars, and his demeanor and hesitancy in answering questions propounded to him are not very impressive. Some of his testimony, in our opinion, varied from the facts. For instance, he describes coming out of a curve just prior to striking the mule, whereas, as shown hereinabove, the road was straight. His speed, indicated by the distance the car traveled after striking the mule and from the fact that the mule was knocked on or over and carried by the car approximately sixty-six feet, appears to us very excessive. His rate of speed, so he says, was such that when he saw the mule on the highway at fifty to sixty feet away he barely had time to hit his brakes when the collision occurred. He does not claim to have seen the mule coming on the highway, and, according to the testimony, there does not appear to have been any obstructions to view, as he claimed he could see one hundred fifty to two hundred feet by his lights. If the mule was already on the highway, when its distance away was within the range of his lights, then he should have seen it, and if it was not already on the highway, he should have seen it com-mg m that direction. Obviously, he was not keeping a proper lookout.
It is our conclusion that the plaintiff has not established' his case to that degree of certainty and assurance and with that preponderance and weight of evidence that the law requires. We are of the opinion, too,, that defendant has successfully rebutted the presumption of negligence against him and has sufficiently established that the mule was on the highway through accident and without his fault.
The driver of the car was on a mission of his own, and it appears that he was neither an agent, employee or servant of nor on an errand or mission for the plaintiff, the owner of the car. The fact that the driver is a major son of plaintiff and resides with him does not make the father responsible for his son’s tortious acts. Liability of the father for the fault of a son, in such instances, only attaches when the son is a minor. LSA-C.C. art. 2318.
Therefore, defendant’s reconventional demand is properly rejected.
For these reasons, the judgment of the district court is deemed correct and is,, therefore, affirmed at appellant’s cost.